MURDOCK McNEIL vs. NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

Norfolk.    December 6, 1932. — April 11, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence*, Railroad, Contributory, Violation of company rule.  *Practice,
Civil*, Requests, rulings and instructions, Judge's charge.  *Evidence,*
Opinion.

A violation of a written or printed rule of a railroad corporation promul-
    gated to promote the safety of passengers is evidence of negligence
    on the part of the defendant at the trial of an action against the cor-
    poration for personal injuries sustained by a passenger and caused in
    part by such violation.
At the trial of an action against a railroad corporation for personal in-
    juries sustained by a passenger on a train of the defendant, it appeared
    that the defendant had printed rules requiring that gates and doors
    on car platforms should not be opened while a train was in motion;
    that when a train was about to stop at a station the trainman should
    call the name of the station twice; that when a train made an unusual
    stop the trainman should be careful not to announce the station;
    and that if at an unusual stop there was any movement of passengers
    toward the platform he should announce that it was not a station
    stop.  There was evidence that previous to the accident the plaintiff
    was riding in the rear car of a nine-car train six hundred seventy feet
    long; that the train approached a station with a platform seven hun-
    dred ten feet long on a track separated from the platform by a track
    for trains going in the opposite direction; that the train stopped
    before reaching the station because there was a train in the station
    on the other track; that, previous to the stopping of the train, the
    trainman had called the name of the station; that when the train
    stopped, the plaintiff, following others and thinking the train had
    arrived at the station, went out through the front door on to a car
    platform where there was no trainman and where the gates were open;
    and that as he was descending the steps the train started and he was
    thrown to the ground and injured.  *Held,*  that there was evidence
    that the plaintiff was not guilty of contributory negligence, and of
    negligence for which the defendant was responsible.
At the trial of the action above described, it was proper to refuse to
    permit a passenger called by the defendant to be asked whether he
    knew that the train had not arrived at the station.

TORT for personal injuries.    Writ dated November 30,
1928.

In the Superior Court, the action was tried before *Brown*, J. Material evidence, and exceptions saved by the defendant, are described in the opinion. There was a verdict for the plaintiff in the sum of $27,500. The defendant alleged exceptions.

*E. J. Phillips*, (*H. Lawlor* with him,) for the defendant.

*G. Alpert*, for the plaintiff.

LUMMUS, J. On October 20, 1928, at 9:30 P.M., the plaintiff left Boston for Quincy as a passenger in the rear car of a train of the defendant. He was a carpenter, sixty-seven years old, was a little deaf, wore big, heavy eye-glasses, and for many years had ridden from Boston to Quincy daily on the train. After stopping at Wollaston, the train started up, and some time later, when the train had slowed down and was moving slowly, the trainman Crouse opened the front door of the car and called out "Quincy" with the intention of notifying the passengers that the train was about to stop at the Quincy station. The train stopped, and the plaintiff, thinking that the train had arrived at the Quincy station, went out through the front door of the car. Two or three men who had gone out ahead of the plaintiff went down the steps to the left and off the train. The plaintiff crossed to the rear platform of the car ahead, which had a vestibule, and followed another man down the steps to the left. He testified that there was no trainman on those platforms. Another witness testified that no trainman on those platforms said anything. The trainman before mentioned testified, however, that he was there and told the passengers alighting that the stop was not a station stop and that they should not get off, although he did not say anything to the plaintiff so far as he knows; after he gave that warning, he says, the plaintiff went out of his view. When the plaintiff reached the lowest step, he stopped, with his right hand holding the grabiron, to look to see whether any baggage truck or anything else was coming, for it was very dark outside the train. Before he could take a good look, the train started with a jerk and threw him off under the

wheels between the two cars, with the result that he lost his left arm and most of his right hand.

The south bound train from Boston to Quincy runs on its right hand, or westerly, track. At Quincy, passengers get off the train on the left hand or easterly side and cross the easterly track in order to reach the railroad station, which lies to the east of both tracks. The station platform is about seven hundred ten feet long. The plaintiff was riding in the rear car of a train of nine cars, six hundred seventy feet long, and the platform where he got off was about six hundred feet from the front of the engine. ·

When the south bound train on which the plaintiff was riding approached the Quincy station, a north bound train was standing at the station, on the easterly track. The south bound train stopped at the place where the plaintiff was hurt, before reaching the station, in order to enable the north bound train to move out of the station before the south bound train should stop there. This was in pursuance of a rule providing that only one train should stop at the station at a time. As the north bound train left the station, the south bound train started up to pull into the station.

The printed rules of the defendant also provided that gates and doors upon car platforms shall not be opened while a train is in motion, that when a train is about to stop at a station the trainman shall call the name of the station twice, that when a train makes an unusual stop for any reason the trainman shall be careful not to announce the station, and that if at such a stop there is any movement of passengers toward the platform the trainman shall announce that it is not a station stop. The trainman Crouse, who was in charge of the platforms in question, admitted that the doors or gates upon the platforms were open. A violation of printed or written rules designed to promote the safety of passengers is evidence of negligence. *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476. *Gerry* v. *Worcester Consolidated Street Railway*, 248 Mass. 559, 565.

The foregoing summarizes the evidence. The case was

one for the jury, upon the issues of the negligence of the
defendant and the contributory negligence of the plaintiff,
and the exception of the defendant to the refusal to direct
a verdict in its favor is overruled.  The case is governed by
*Floytrup* v. *Boston & Maine Railroad*, 163 Mass. 152, and
*Barry* v. *Boston & Albany Railroad*, 172 Mass. 109.  For a
collection of cases, see 58 Am. L. R. 1091–1119.  The motion
for a directed verdict was based "upon the pleadings" as
well as "upon all the law and the evidence"; but there was
no variance.  The declaration sets out in substance a negli-
gent invitation to get off and a sudden starting of the train
while the plaintiff was getting off, and that is the gist of
the case shown by the evidence.

We have examined the numerous requests of the defend-
ant for instructions, and find nothing that calls for discus-
sion.  Most of the requests fall under the rule that a judge
is not bound to instruct the jury as to the legal effect of
part of the evidence or subsidiary facts bearing upon an
issue.  *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47.
The requested rulings would not have helped the jury to
understand the legal situation, in view of the full charge
given; and the refusal to give them was not error.

The defendant rather vaguely saved an exception "to
so much of the court's charge as intimated that the jury
might find that there might be further negligence on the
part of the trainman Crouse, other than the warning that
this was not a station stop."  The defendant points out a
passage in the charge in which the judge inquired, "Was
the defendant negligent in failing, not necessarily to warn,
but to prevent passengers leaving that train at that point?"
The judge was discussing the case upon the assumption,
justified by the evidence, that the plaintiff was invited to
get off by the words and conduct of the defendant's train-
man Crouse.  In view of that invitation, the trainman
might be found not to have done his full duty by merely
stating that the stop was not a station stop, if he did so
state.  The gates were open, and upon some of the evidence
it could be found that the trainman remained idle upon the
platform while passengers went into danger in pursuance

of his invitation. The exception did not direct the attention of the judge to any limitation in the declaration of the sort of negligence relied upon. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108. In fact, the declaration alleged in substance a negligent invitation to get off, and the passage in question referred to details of the continued negligent invitation.

The exception of the defendant to the refusal of the judge to permit a passenger called by the defendant to be asked whether he, the passenger, knew that the train had not arrived at the station, cannot be sustained. Any facts equally within the observation of the witness and that of the plaintiff could have been shown, but the conclusion of the witness was incompetent.

*Exceptions overruled.*