MYRTLE O. BALLOU *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    November 7, 1960. — February 2, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Evidence,* Conflicting statements of witness.    *Negligence,* Railroad: assistance of passenger.    *Practice, Civil,* Charge to jury.

In an action for personal injuries sustained in a fall, it could not properly have been ruled that the plaintiff finally adhered to a cause for her fall mentioned in statements out of court which she admitted on cross-examination having made, rather than to a different cause mentioned in specifications filed by her and in her direct and redirect examination. [698]

A finding of negligence on the part of the conductor of a railroad train toward a woman passenger was warranted by evidence that when she reached the bottom step of a car in alighting from the train in the dark the conductor placed his hand under her arm to assist her and then, as she stepped off in reliance on such support, withdrew his hand, whereupon she "went down and landed on her . . . knee." [698–699]

In an action against a railroad for personal injuries sustained by a woman passenger in falling while alighting from a train, the judge's charge, properly construed, confined the issue to negligence of the conductor in actually assisting the plaintiff to alight, as specified by her, and was not objectionable as also submitting to the jury negligence of the conductor in failing to render assistance to her. [699–700]

TORT.    Writ in the Superior Court dated November 22, 1955.

At the trial before *Tomasello,* J., there was a verdict for the plaintiff.    The defendant alleged exceptions.

*Edward M. Sullivan, Jr.,* for the defendant.

*Francis V. Matera, (John H. F. Calver* with him,) for the plaintiff.

WILLIAMS, J.    This is an action of tort to recover for personal injuries received by the plaintiff when she fell in alighting from a train of the defendant at the Reading station on the evening of November 26, 1953.    As to the defendant's negligence, she specified "that she was obliged

to alight from the train at a point that was unsafe, that the area where the plaintiff alighted was dark and in a danger-ous and unsafe condition, that the conductor assisted her down the steps of the train and when she was about to step off the train, the conductor withdrew his assistance causing the plaintiff to fall from the high distance between the last step to the ground at the point of egress.''

The plaintiff testified that she was a passenger on a train of the defendant which arrived at the Reading station at about 10:30 P.M.  She was wearing a heavy coat and carry-ing a pocketbook and suitcase.  When the train stopped she picked up her suitcase, carried her pocketbook over her left arm, wrapped her coat around herself, walked to the plat-form and stood there.  The conductor who was on the ground said ''May I take your bag, Miss?''  She said ''Yes,'' and handed it down to him.  ''[S]he went down the stairs slantwise, and there was a railing . . . she hit the bottom step and then turned and faced him; it was dark and kind of rough gravel on the bottom; . . . she could see little pieces of rock and that's why she waited to be helped; as she was standing on the bottom step the conductor put his hand under her arm (indicating) and she relied on it and when she stepped off it was withdrawn; she went down and landed on her left knee.''

On cross-examination she testified that she was not sick, infirm or disabled in any way; that at no time after she fell did she say anything to anybody including this conductor about any offer and withdrawal of help; and that she told her physician with whom she discussed the matter on November 30, 1953, that the step was just too high without help.  When asked if she meant it when she told him that, the plaintiff answered ''That's right, I didn't get any help.''

She admitted that in a statement made by her to a repre-sentative of the railroad she said, ''No assistance was given me by the brakeman as I was getting off. . . .  The whole cause of my fall was the heighth of the bottom steps above the station platform.''  She testified on redirect examina-tion, however, that at the time the statement was taken she

Ballou *v.* Boston & Maine Railroad.

told the representative "that when she got to the bottom step she turned and faced the conductor and took her hand away [from the rail]; . . . that he put his hand up and placed it under her right arm and figuring that she had his support she stepped off with her left foot and the conductor withdrew his arm and she went down on her left knee."

The plaintiff introduced a rule of the defendant relating to passenger conductors which stated "They must see that necessary assistance is rendered from the station platform to passengers when boarding or leaving the train." At the conclusion of the evidence the judge, subject to the defendant's exception, denied its motion for a directed verdict and the jury returned a verdict for the plaintiff.

The defendant urges that the plaintiff, having made different statements as to the cause of her fall, must be held to have finally adhered to a contention that it was caused by the height of the step rather than by a withdrawal of assistance on the part of the conductor (see *Sullivan* v. *Boston Elev. Ry.* 224 Mass. 405, 406; *Osborne* v. *Boston Consol. Gas Co.* 296 Mass. 441, 444), and that the merits of the defendant's motion must be determined on the basis of such construction of her testimony. If the position taken by the defendant is sound, the direction of a verdict in its favor was required, since the plaintiff had specified that the act of negligence upon which she based her case was the withdrawal of assistance by the conductor. See *Shea* v. *Crompton & Knowles Loom Works,* 305 Mass. 327, 329; *Snow* v. *Metropolitan Transit Authy.* 323 Mass. 21, 23. We think, however, that the plaintiff ought not to be bound by such an interpretation of her testimony. Her extrajudicial statements and admissions under cross-examination might be found to cast doubt on the accuracy of her testimony but did not require a finding that she abandoned her claim as to the withdrawal of assistance by the conductor which she had made on direct examination.

There was no error in the denial of the defendant's motion for a directed verdict. The jury would have been warranted in finding that the conductor attempted to assist the plain-

Ballou *v.* Boston & Maine Railroad.

tiff to alight from the train; that he put his hand under her arm and after thereby causing her to rely upon this support withdrew his hand as she stepped to the ground. It was for them to determine whether his act caused the plaintiff to fall and whether having volunteered his assistance he exercised reasonable care for the plaintiff's safety in failing to continue it. *Black* v. *New York, N. H. & H. R.R.* 193 Mass. 448, 450. See *Moody* v. *Boston & Maine R.R.* 189 Mass. 277, 280.

The defendant's principal exception is to the judge's charge. He instructed the jury that "Ordinarily it is not the duty of the servant of the carrier to assist passengers to alight when no request for aid is made and the necessity for it is not apparent; but where the carrier's servant undertakes to assist the passenger, he owes to him only the duty of reasonable care. It is for you to determine on the evidence whether the conductor here offered to assist and whether under the particular circumstances with this lady with her suitcase in one arm and pocketbook in the other, whether the circumstances warranted a finding that there were these conditions that would warrant the assistance given. As I say, there is no actual duty or obligation to assist in regard to any passenger, but if assistance is offered under certain circumstances then the carrier's servants must exercise a duty of reasonable care . . . ."

Thereafter, apparently in response to suggestions by the defendant's counsel, he charged the jury as follows: "[T]he jury must return a verdict for the defendant unless it finds that an employee of the defendant rendered or attempted to render assistance to the plaintiff in alighting from the train, that he did so carelessly by withdrawing the assistance, and that she was caused to fall thereby; and next the jury must return a verdict for the defendant unless it finds that an employee of the defendant offered assistance to the plaintiff in alighting from the train, that he then withdrew the assistance and that the withdrawal caused her to fall; and next that the jury must return a verdict for the defendant if it finds that the plaintiff was negligent, however slightly, and

that her negligence contributed to her fall. . . . You are, naturally, as I say, to determine whether there was negligence in so far as the conductor was concerned, whether there was a withdrawal of assistance, and whether any assistance was offered. That, as I said before, is for you to determine. You are likewise to determine whether there was a necessity for assistance based upon the appearance of the plaintiff, as I stated before, handbag in one hand and the suitcase in the other, and by her, as she testified—if you believe this testimony, that she halted on the last step, whether there was an indication that she anticipated assistance.''

''The defendant duly excepted to the last sentence of the above quoted part of the instructions; and to the instructions of the court to the extent that they indicate that the jury might find the defendant negligent in failing to render assistance to the plaintiff, with particular reference to there being sufficient evidence for the jury to find any apparent need for assistance.''

It may be conceded that in view of the plaintiff's specifications no issue was presented whether in the performance of his duty the circumstances required the conductor to assist the plaintiff. See *Moody* v. *Boston & Maine R.R.* 189 Mass. 277, 280; *Friend* v. *Boston & Maine R.R.* 323 Mass. 349, 351. But we think that the instructions are not to be construed as submitting this question to the jury. The jury were told categorically that they must return a verdict for the defendant unless they found that the plaintiff was caused to fall by the withdrawal of offered assistance by its employee. The sentence to which the defendant excepts did not purport to charge that the plaintiff could recover if there was a ''necessity for assistance'' and the defendant negligently failed to render it. The judge's reference to the necessity for assistance went no farther than to direct the attention of the jury to the factual situation and its bearing on the likelihood of assistance having been offered. The exceptions to the charge are not sustained.

*Exceptions overruled.*